McNALLY v. ZELLER MARINE CORPO-
RATION et al.

In re TRIBORO SCOW CORPORATION.

In re O'BRIEN BROS., Inc. (two cases).

THE TRIBORO NO. 14.

THE WINNING LIGHT.

THE RICHMOND LIGHT.

District Court, S. D. New York.
Feb. 26, 1948.

986

Treacy & Gough, of New York City (J. Emerson Gough, and Edgar J. Treacy, both of New York City, of counsel), for libelant.

Alexander & Ash, of New York City (Edward Ash and Sidney A. Schwartz, both of New York City, of counsel), for O'Brien Bros., Inc.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, and Martin J. McHugh, of Orange, N. J., of counsel), for Moran Towing Corporation.

Foley & Martin, of New York City (Edward J. Ryan, of Rochester, N. Y., of counsel), for Zeller Marine Corporation.

Galli & Locker, of New York City (Frederick Locker, of New York City, of counsel), for Triboro Scow Corporation.

Hill, Rivkins & Middleton, of New York City (Eugene P. McCue, of New York City, of counsel), for Christie Scow Corporation.

RYAN, District Judge.

Daniel McNally, libelant, sues in admiralty to recover damages from Zeller Marine Corporation, Moran Towing Corporation, O'Brien Bros. Inc., Christie Scow Corporation and Triboro Scow Corporation for personal injuries sustained by him on February 1, 1943.

Respondents O'Brien Bros. Inc. and Triboro Scow Corporation petitioned for limitation of liability. At the conclusion of the trial the right to limit liability was conceded. Libelant consented to a dismissal of the suit against the respondents, Zeller Marine Corporation and Christie Scow Corporation, leaving for determination the libelant's claim against the three remaining respondents, Moran Towing Corporation, O'Brien Bros. Inc. and Triboro Scow Corporation.

At the time of the accident, McNally was employed as a laborer by Charles S. Vachris & Company, a contractor engaged in constructing a wharf in the vicinity of Port Johnson, Bayonne, New Jersey. In the course of such construction work, fill was being delivered to this company at the Babcock & Wilcox dock, at Bayonne, New Jersey. Vachris & Company took charge of the unloading of the fill. This necessitated moving of the scows when a crane on the adjacent dock could not reach the fill piled up on the scows, at which time the crane operator would tell the men on the wharf and they would move the particular scow. There was no evidence present as to whose employees these men were, but there was evidence that they were not employed by respondents.

On the day of the accident there were three scows loaded with fill in the immediate area—the Richmond Light, Winning Light and Triboro #14. Richmond Light and Winning Light were owned by respondent O'Brien Bros. Inc., and were chartered to Moran Towing Corporation by the Zeller Marine Corporation. The Triboro #14 was owned by respondent, Triboro Scow Corporation and chartered to the Christie Scow Corporation who in turn sub-chartered her to Moran Towing Corporation.

Libelant went aboard the Richmond Light at 8 a. m. on February 1, 1943, with three fellow employees. About fifteen minutes later, unknown to libelant, the captain, George Wray, came aboard. Libelant's job was to scrape the fill from the sides of the

scow and shape it so that the crane could remove it. He testified that, when they had been working for three-quarters of an hour,

" * * * the crane stopped again, the engineer figured the barges was getting away from him, and he couldn't get in there with the shovel, so the barge started to leave the pier. * * * So I went around the side of the barge to go off the barge. * * * I heard somebody holler, 'Watch the line,' and I turned around to look, and as I turned around I was pinned by the rope against the pin."

The explanation offered by libelant as to how his foot was caught by the line was:

"Well, the barge seemed to list or so—either something hit and moved, and I stepped back and I was thrown off my balance and I got pinned with the rope."

About sixty feet astern of the Richmond Light were the Winning Light and Triboro #14. Triboro #14 was tied up against Winning Light which was tied to another large scow. Laborers, not employed or controlled by respondents, working astern of the Richmond Light, on a pile driver, started to move the Winning Light and Triboro #14, which due to the strong current and the wind got out of hand moving down upon the Richmond Light. A line was thrown to this scow from the Winning Light in an effort to control the movement of the scows, but it broke; and the second line thrown held and was attached to the third quarter bitt of the Richmond Light, by someone other than the scow captain. The Winning Light was moving rapidly and the sudden force which it was checked by this line caused it to swing around and hit the Richmond Light amidship; this impact forced this scow's stern toward mid-stream and its stern hauser to start to slip. Libelant and his foreman ran over and in an attempt to stop the slipping took hold of the hauser and tried to make it fast. While doing so libelant's leg was caught in the line and it was pinned by the hauser against the bitt. As a result of the injuries he sustained his leg had to be amputated some months later four inches below the knee.

Libelant knew little, if anything, about scows—their movement, their handling, how to tie a hauser or how one was tied. At the time of the accident, the captain was aboard and available to perform all the necessary duties to keep the scow in a safe condition; yet, libelant took it upon himself to check the slipping hauser without calling the captain.

"It is a fundamental principle in the law of this state that in an action for a personal injury based, on the negligence of the defendant, the absence of negligence on the part of the plaintiff, contributing to the injury, must be affirmatively shown by the plaintiff, either by direct proof or by circumstances, and that no presumption arises from the happening of an injury and proof of negligence on the part of the defendant, that the plaintiff was free from blame. Reynolds v. New York Cent. & H. R. R. Co., 58 N.Y. 248." Weston v. City of Troy, 139 N.Y. 281, 282, 34 N.E. 780.

"Contributory negligence may consist not only in a failure to discover or appreciate a risk which would be apparent to a reasonable man, or an inadvertent mistake in dealing with it, but also in an intentional exposure to a danger of which the plaintiff is aware. In such cases, the plaintiff's conduct may be such as to indicate consent to encounter the danger and relieve the defendant of responsibility. * * * Restatement of Torts, Sec. 466; McGuire v. New York Rys. Co., 230 N.Y. 23, 128 N.E. 905." Prosser on Torts (1941), p. 400.

Libelant has not offered proof of absence of negligence on his part. Nor, has it been satisfactorily shown by competent proof that any of the respondents were negligent. The evidence clearly shows that the scows, Winning Light and Triboro #14, were moved by acts of a third party in no way connected or employed by any of the respondents. It was the manoeuvring of the Winning Light and Triboro #14, and the collision of the former with the Richmond Light which caused this scow to move and its stern hauser to slip. The evidence in this case does not in any way involve the application of the doctrine of res ipsa loquitur. (Foltis, Inc., v. City of New York, 287 N.Y. 108, 114, 38 N.E.2d 455, 153 A.L.R. 1122.) There is no evi-

dence to justify the conclusion that when the stern hauser started to slip an emergency arose, as there were two other lines holding the Richmond Light to the wharf.

The conclusion is inescapable that libelant has failed to establish absence of negligence on his part and to produce evidence to substantiate a finding of negligence on the part of respondents.

Libelant must therefore be denied recovery and his suit dismissed.

Submit findings and judgment.